UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA        :
                                :
v.                              :   CR No. 1:09-M-167A
                                :   CR No. 1:09-M-169A
ENMANUEL HILARIO                :
KENNETH ORTIZ                   :

**MEMORANDUM AND ORDER**

Defendants in these related cases are each charged with possessing 100 grams or more of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and aiding and abetting such offense in violation of 18 U.S.C. § 2.[1] On September 8, 2009, both Defendants appeared together before me for a preliminary hearing held pursuant to Fed. R. Crim. P. 5.1. Both Defendants were represented by appointed Defense counsel at this hearing. At the conclusion of the preliminary hearing, I took the issues of probable cause under advisement as to both Defendants. For the reasons discussed below, I find PROBABLE CAUSE, pursuant to Fed. R. Crim. P. 5.1(e), to believe that the charged offenses were committed and that Defendants committed those offenses.

**Discussion**

A.   **Preliminary Hearing Standards**

It is well-settled that the Government's burden to establish probable cause at this preliminary stage is low. A preliminary hearing under Fed. R. Crim. P. 5.1 is narrow in scope.

---

[1] In order to convict one of aiding and abetting a crime, the Government must first establish that the crime was committed by a principal, and then prove that the alleged aidor and abettor "consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal." United States v. Garcia-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007). Mere association with the principal or presence at the scene of a crime is insufficient by itself to support a conviction for aiding and abetting a crime. Id.

Its purpose is solely to test whether "probable cause" exists as to the offense(s) charged. It is not a discovery mechanism for defendants, and it is not a trial to determine guilt or innocence. Finally, it is not the proper setting to raise suppression issues, to test the ultimate admissibility of evidence at trial or to require proof sufficient to convict a defendant. See Fed. R. Crim. P. 5.1(e) and 12.

Although mere suspicion does not suffice, probable cause may be found where there is a "fair probability," based on the totality of the circumstances, that a defendant committed the offense charged. See United States v. Mims, 812 F.2d 1068, 1072 (8th Cir. 1987), quoting Illinois v. Gates, 462 U.S. 213, 231 (1983). Both circumstantial evidence and the reasonable inferences drawn therefrom can support a finding of probable cause. United States v. Swope, 542 F.3d 609, 616 (8th Cir. 2008). See also United States v. Bucuvalas, 970 F.2d 937, 940 n.3 (1st Cir. 1992) ("circumstantial evidence alone may establish probable cause"); and United States v. Diaz, 491 F.3d 1074, 1078 (9th Cir. 2007) ("a probable cause determination can be supported entirely by circumstantial evidence"). The Federal Rules of Evidence generally are not applicable at preliminary hearings, Fed. R. Evid. 1101(d)(3), and accordingly, a probable cause finding may be based, in whole or in part, on hearsay evidence.

B.   **Probable Cause as to Defendant Ortiz**

The Government relied upon the sworn Affidavits of DEA Agent Daniel MacIsaac (Gov't Exs. 1 and 2), as well as his testimony, in support of its burden to establish probable cause. The Government easily met its burden as to Defendant Ortiz. This case arises out of the seizure of

over 300 grams of heroin[2] from a hidden compartment in a 2003 Honda Pilot (the "Pilot") on September 2, 2009. Although the vehicle is not registered in Ortiz's name, the First Affidavit (Gov't Ex. 1) indicates that physical surveillance has shown that Ortiz uses the Pilot "on a daily basis." The Second Affidavit (Gov't Ex. 2) indicates that Defendant Ortiz drove the Pilot to a parking lot on the afternoon of August 24, 2009 and met with an individual identified as Russell Santelises. Shortly after this meeting, Defendant Ortiz drove the Pilot on an overnight trip to New York City. Upon his return to Rhode Island on August 25, 2009, Defendant Ortiz was visited by Santelises at his residence and the two got into the Pilot and circled Ortiz' neighborhood for almost fifteen minutes. Santelises exited the Pilot and drove away in his car. Santelises was followed and later stopped by law enforcement. This stop resulted in Santelises' arrest and seizure of a package on Santelises' person containing approximately fifty grams of heroin.

The Affidavits (Gov't Exs. 1 and 2) indicate that the heroin seized on September 2, 2009 was found in a hidden compartment located in the back of the passenger's side front seat of the Pilot. Agent MacIsaac testified that surveillance of a meeting between Defendants Ortiz and Hilario near Hilario's apartment in the Jamaica Plain neighborhood of Boston revealed that Ortiz opened the rear passenger side door of the Pilot and removed a child's car seat from the back seat. Subsequently, Defendant Hilario was observed handing "something" to Defendant Ortiz and Ortiz was then observed bending into the right rear passenger area of the Pilot – the area where the hidden compartment was ultimately found in the Pilot.

---

[2] Agent MacIsaac opined that the heroin seized on September 2, 2009 had a value exceeding $20,000.00.

It simply strains credulity to suggest that Ortiz was unaware that the Pilot he regularly used contained a hidden compartment which contained over $20,000.00 worth of heroin on September 2, 2009 or that there is no relationship between Ortiz' August 24, 2009 meeting with Santelises, the overnight trip to New York, the August 25, 2009 meeting with Santelises (including circling around the neighborhood with him in the Pilot) and Santelises' arrest shortly thereafter with a significant quantity of heroin in his possession. Thus, viewing the evidence (including circumstantial evidence) in its entirety and in a practical, common sense fashion, I conclude that the evidence presented by the Government meets its burden of establishing probable cause that Defendant Ortiz committed the offenses charged in the Criminal Complaint.

**B.     Probable Cause as to Defendant Hilario**

The case is not as direct as to Defendant Hilario. Hilario was a passenger in Ortiz' Pilot when it was stopped on September 2, 2009 and he was sitting in the front passenger seat that was later found to contain over 300 grams of heroin in a hidden compartment. Although the Government offered some evidence linking Hilario to Ortiz and to the Pilot, it is limited and there has not yet been any direct evidence presented that Hilario was aware of the hidden compartment or the heroin contained therein.

The Government's case for probable cause rests on circumstantial evidence. Thus, the question is whether the totality of that circumstantial evidence establishes probable cause or merely suspicion. By Affidavit (Gov't Exs. 1 and 2), the Government proffers evidence of five surveilled contacts between Hilario and Ortiz – August 7, 2009 at Ortiz' house, August 14, 2009 at Ortiz' house with Hilario driving one of Ortiz' cars, August 24-25, 2009 in the Pilot on an

overnight trip from Ortiz' house to a meeting with Santelises in Warwick to New York City and back to Ortiz' house, and September 2, 2009 in the Pilot in the vicinity of Ortiz' house. Agent MacIsaac also testified as to a contact on August 20, 2009 near Hilario's apartment where Hilario was observed giving "something" to Ortiz which resulted in Ortiz bending into the rear passenger door near the location of where the hidden compartment was found after the September 2, 2009 stop of the Pilot.

Based on this evidence, the Government posits that Hilario was an associate of Ortiz in a drug trafficking operation, that the purpose of the August 24-25, 2009 New York trip by Ortiz and Hilario was to obtain narcotics and that, later on August 25, 2009, Ortiz delivered some or all of those narcotics to Santelises shortly before he was arrested and found to be in possession of approximately fifty grams of heroin. Further, the Government posits that Ortiz and Hilario were in the process of distributing heroin when they were stopped on September 2, 2009 in the Pilot with over 300 grams of heroin located in the hidden compartment.

Defense counsel vigorously argued that the Government's case against Hilario is based purely on speculation and that there is no direct evidence linking Hilario to either heroin or the hidden compartment. The evidence is less direct as to Hilario, and Defense counsel posits that he was an "unwitting" friend or associate of Ortiz and passenger in the Pilot containing the seized heroin. Although one could come up with separate plausible innocent explanations for Hilario's contacts with Ortiz and his presence in the Pilot, to do so requires tunnel vision and an abandonment of common sense. As noted above, it strains credulity to suggest that there is no relationship between Hilario's presence on August 24, 2009 at Ortiz' meeting with Santelises,

Hilario's participation in the overnight trip to New York in the Pilot, Ortiz' August 25, 2009 meeting with Santelises (including circling around the neighborhood with him in the Pilot) and Santelises' arrest shortly thereafter with a significant quantity of heroin in his possession, or that mere coincidence explains Hilario's subsequent presence in the Pilot on September 2, 2009 when it contained a significant quantity of heroin.  When considered collectively, the totality of the circumstantial evidence presented by the Government as to Hilario exceeds (even if just barely so) the realm of mere suspicion and meets the standard of probable cause.

_____
LINCOLN D. ALMOND
United States Magistrate Judge
September 9, 2009